# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| APFA INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-00108-O |
| | § | |
| UATP MANAGEMENT, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court are Defendant UATP Management, LLC's Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay This Action Pending Arbitration (ECF No. 31), filed February 26, 2021; Plaintiff APFA Inc.'s Memorandum of Law in Opposition ("Response") (ECF No. 36), filed March 29, 2021; and Defendant's Reply (ECF No. 37), filed April 13, 2021. Having considered the motion, briefing, and applicable law, the Court **GRANTS** the motion to dismiss, **DENIES as moot** the alternative motion to stay the suit pending arbitration, and **DENIES without prejudice** the motion for attorneys' fees.

## I.    BACKGROUND[1]

This case arises out of a dispute between a franchisor and an association of franchisees. Defendant UATP Management, LLC ("Defendant") nationally franchises nearly two hundred "Urban Air" locations—indoor adventure parks. Plaintiff Adventure Park Franchisee Association Inc. ("APFA" or "Plaintiff") represents more than fifty Urban Air franchisees in the United

---

[1] In its discretion, the Court relies upon the Complaint in its recitation of the facts without presuming the truthfulness of Plaintiff's allegations. *See Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981) ("On a factual attack to subject matter jurisdiction, no presumptive truthfulness attaches to [the] plaintiff's allegations . . .."); *see also Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996) (citation omitted) (In ruling on a 12(b)(1) motion, a court may rely upon: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.").

States, with its mission to "protect[] and preserv[e] the rights of Urban [A]ir franchisees[.]" Compl. ¶¶ 6–7, ECF No. 1.

Before Defendant enters a franchise agreement with a potential franchisee, Defendant provides the potential franchisee with a Franchise Disclosure Document ("FDD") which contains a form Franchise Agreement. Under its 2016 FDD, Defendant disclosed (1) a Royalty Fee of "6% of weekly Gross Sales," (2) a Development Fund Fee of "1% of weekly Gross Sales," (3) an Administrative Fee of the "pro-rata portion of call centers hourly rate plus a $5.00 commission," and (4) a "Local Marketing Expenditure" of "5% of monthly Gross Sales . . . [p]ayable to the person providing services, which may be [Defendant]." Under the 2017 FDD, Defendant disclosed removal of the Developmental Fund Fee and a raise of the Royalty Fee to "7% of weekly Gross Sales."

In April 2019, Defendant started a Membership Program for its customers through which it collects all revenues of memberships sold by franchisees and distributes a portion of the revenues to the individual franchisees. Defendant levied a Membership Program Fee of 2.5% and a "NAF Fee" of 5% on all its franchisees to fund the Membership Program. Defendant, through its General Counsel Stephen Polozola, proposed to its franchisees an "Amendment to Franchise Agreement (Membership Program)" and a new "ACH Authorization," allegedly misrepresenting the Amendment and Authorization and withholding membership revenues until the franchisees agreed to the new terms. Some franchisees signed the Amendment and Authorization while others have refused. Plaintiff maintains that both documents are overly broad, improper, and inconsistent with the express terms and provisions of the form Franchise Agreement and the FDDs.

Defendant also implemented a new local marketing program with a vendor Zimmerman at a rate of "four percent (4%) of monthly Gross Sales" paid directly to Defendant. Plaintiff alleges the new fees, proposed terms, ban on direct interfacing with Zimmerman representatives, and Defendant's profit from its relationship with vendors are improper, are unlawful, and run afoul of the form Franchise Agreement and of Defendant's CEO Michael O. Browning, Jr.'s promises that the franchisee local marketing expenditure would be capped at $7,000 per month and that Defendant would not make money from markups with vendors and suppliers, like its competitors.

The imposition of mandatory vendors goes beyond Zimmerman; Defendant has imposed several other mandatory vendors on franchisees—for socks, construction, and insurance. One vendor is mandated for the over 8,000 pairs of socks purchased by franchisees each month which charges approximately $0.50 per pair above comparable alternative suppliers while Defendant receives a rebate of $0.25 per pair. Another since-terminated vendor Leap of Faith was required for the over $500,000 in construction and installation costs while Leap of Faith allegedly paid revenues and rebates to Defendant up to 60% of its contract price with franchisees. Not knowing the heightened cost due to the rebate, many franchisees sought and were given financing through Defendant backed by promissory notes and an additional 1.5% royalty fee on gross sales, but Defendant never paid Leap of Faith invoices. Plaintiff maintains that the purported financing runs afoul to the FDD and the form Franchise Agreement which claim not to offer direct or indirect financing.

Defendant similarly imposed a mandatory insurance broker, which allegedly overcharged franchisees and made several mistakes, errors, and omissions in procurement of its insurance coverages. Franchisees are forbidden from choosing a broker to procure insurance with superior

coverage and at a lower cost even though the form Franchise Agreement said otherwise and Defendant represented to franchisees on December 18, 2019, that "[f]ranchisees are free to shop all other insurance through the broker of their choice, assuming such policies contain the various terms and endorsements required by [Defendant]." Defendant intends to introduce a "captive" insurance program, by which Defendant will create its own insurance company and profit from franchisees, but the new insurance company is not licensed in every state with a franchise and lacks the rating required by the Franchise Agreement.

According to Plaintiff, in the aggregate these actions show wrongful and bad faith conduct by Defendant to generate its own profits with disregard for its agreements and the unfair and material effects on franchisees. Plaintiff maintains that Defendant breached the franchisees' rights in the form Franchise Agreement and violated the FTC's Amended Franchise Rule for lack of proper disclosures in the FDDs. Defendant has also allegedly inflicted retaliatory and bullying tactics on individual franchisees dampening their association and communication among each other.

In response, Plaintiff sued Defendant in the United States District Court for the District of New Jersey, seeking several declarations including that Defendant has breached an implied covenant of good faith and fair dealing, violated the Texas Deceptive Trade Practices Consumer Protection Act (TDTPCA), violated the New Jersey Franchise Practices Act (NJFPA), engaged in common-law fraud, and breached the franchise agreements. Compl. ¶¶ 131–40, ECF No. 1. Based on the requested declarations, Plaintiff also seeks injunctive relief to enjoin Defendant "from seeking to enforce the unconscionable arbitration provisions contained in its unlawfully-obtained amendments to some—but not all—of [Plaintiff's] members' franchise agreements." Mot. for Prelim. Inj., ECF No. 10. In the District of New Jersey, Plaintiff sought a preliminary

injunction, which the court denied; Defendant sought dismissal of the complaint or transfer of the case to the Northern District. *See id.*, ECF No. 10; Def.'s Mot. to Dismiss, ECF No. 11. On *forum non conveniens* grounds limiting its discussion to the effect of the existence of a forum-selection clause, the District of New Jersey court transferred the case here under 28 U.S.C. § 1404(a). *See* Mem. Op. 1, ECF No. 21.

Before this Court, Defendant now again moves to dismiss Plaintiff's claims for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and alternatively requests a stay of the case pending arbitration. *See* Mot., ECF No. 31. The parties have briefed the motion, and it is ripe for the Court's consideration. *See* Resp., ECF No. 36; Reply, ECF No. 37.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A court dismisses a case under Rule 12(b)(1) for lack of subject-matter jurisdiction if it "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). A court should "consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers," *Renne v. Geary*, 501 U.S. 312, 316 (1991) (citation omitted), so "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161 (citation omitted).

### B. Standing

"Every party that comes before a federal court must establish that it has standing to pursue its claims." *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013); *see also Barrett Comput. Servs., Inc. v. PDA, Inc.*, 884 F.2d 214, 218 (5th Cir. 1989). In claims for declaratory or injunctive relief, standing may be satisfied by the presence of "at least one individual plaintiff who has demonstrated standing to assert the[ ] [contested] rights as his own." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 & n.9 (1977); *see also Horne v. Flores*, 557 U.S. 433, 446–47 (2009). "The doctrine of standing asks 'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" *Cibolo Waste*, 718 F.3d at 473 (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004)). Standing has both constitutional and prudential components. *See Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001); *see also Cibolo Waste*, 718 F.3d at 473 (quoting *Elk Grove*, 542 U.S. at 11) (standing "'contain[s] two strands: Article III standing . . . and prudential standing'"). Constitutional standing requires a plaintiff to establish that it has suffered an injury in fact traceable to the defendant's actions that will be redressed by a favorable ruling from the Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

## III. ANALYSIS

At the outset, the parties disagree whether this Court may review Plaintiff's standing in light of the District of New Jersey's transfer under 28 U.S.C. § 1404(a). Invoking the law of the case doctrine,[2] Plaintiff contends that Defendant presents "subject matter jurisdiction arguments that the District of New Jersey already rejected[,]" and "'carefully considered[.]'" Resp. 4, ECF

---

[2] The "law of the case" doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988).

No. 36 (quoting Mem. Op. 1, ECF No. 21). Defendant disagrees, arguing that "the District of New Jersey's opinion is clear that the court did not consider those issues." Reply 2, ECF No. 37. No matter the characterization of the District of New Jersey's transfer,[3] this Court has an independent duty to analyze whether any plaintiff before it has standing.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "One element of the case-or-controversy requirement" commands that a litigant must have standing to invoke the power of a federal court. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "Standing is a jurisdictional requirement and not subject to waiver." *Doe v. Tangipahoa Par. Sch. Bd.*, 494 F.3d 494, 496 n.1 (5th Cir. 2007) (citing *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996)). Thus, when a standing issue presents itself, "[a] federal court must consider its jurisdiction *sua sponte*." *Id.* (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93 (1998)). "Standing to sue must be proven, not merely asserted, in order to provide a concrete case or controversy and to confine the courts' rulings within our proper judicial sphere." *Id.* at 499.

In this case, whether the District of New Jersey fulfilled its obligation of analyzing and concluding that this Court has subject matter jurisdiction before transferring on *forum non conveniens* grounds is of no moment now. To scrutinize its own jurisdiction, the Court need not re-litigate whether Plaintiff made a *prima facie* showing that this Court is a venue where the

---

[3] Indeed, the Court is left with—at best—an ambiguous implication that the District of New Jersey decided that this Court has jurisdiction or, more likely, no determination or decision at all about this Court's jurisdiction or Plaintiff's standing because the District of New Jersey expressly declined to address the associational standing issue before transferring it here. *See* Order 1, ECF No. 21; *see also Propes v. Quarterman*, 573 F.3d 225, 228 (5th Cir. 2009) (citing *Goodwin v. Johnson*, 224 F.3d 450, 457–58 (5th Cir. 2000)) (noting that the law of the case doctrine is implicated only when an earlier court makes "determinations" of law; *Christianson*, 486 U.S. at 817 (same for "prior decisions")).

action "might have been brought" and, in practice, reverse the District of New Jersey's transfer order; the Court need only *sua sponte* consider its own jurisdiction—an essential obligation of all federal courts. *See Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)) ("[S]ubject-matter delineations must be policed by the courts on their own initiative."). The Court cannot blindly bypass a jurisdictional question without scrutiny and then exercise its judicial power. *See Tangipahoa Par. Sch. Bd.*, 494 F.3d at 496 n.1, 499. Thus, the Court first addresses whether Plaintiff has standing to bring this suit.[4]

### A. Motion to Dismiss for Lack of Associational Standing

Plaintiff's alleged basis for standing is associational standing on behalf of its members—all of whom are franchisees of Defendant. *See* Compl. 5–7, ECF No. 1. The parties disagree whether Plaintiff has met its burden of establishing associational standing to sue in a representative capacity. *See* Mot. 9, ECF No. 31; Resp. 7–19, ECF No. 36. For the forthcoming reasons, the Court concludes Plaintiff does not have associational standing in this case.

"There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy, but even in the absence of injury to itself, an association may have standing solely as the representative of its members." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (internal quotation marks and brackets omitted) (quoting *Warth v. Seldin*, 422 U.S. 490, 511, (1975)); *see also Tex. Ass'n of Mfrs. v. United States Consumer Prod. Safety Comm'n*, 989 F.3d 368, 377 (5th Cir. 2021) ("Associations may assert the standing of their own members."). For an association to have standing to bring

---

[4] For the same reasons, the Court declines Plaintiff's similar invitation to consider "judicial economy alone" as the reason "to retain jurisdiction[.]" Resp. 19, ECF No. 36.

suit on behalf of its members, the association must show that "[1] its member would otherwise have standing to sue in their own right; [2] the interests it seeks to protect are germane to the organization's purpose; and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* (citation omitted); *see also Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). Courts across the country have diverged on the application of the *Hunt* associational standing test to franchisee associations seeking to vindicate the rights of its members against a franchisor. *See* W. Michael Garner, *Associational Standing*, 17 Franch. & Distr. Law & Prac. 31 (2020); Daniel M. Janssen & Andrew P. Beilfuss, *Franchise Association Lawsuits Against Franchisors: Is There A Leg to Stand On?*, 35 Franchise L.J. 435, 439 (2016). In this case, only the first prong and third prong are in dispute—a constitutional requirement and prudential inquiry respectively. *See id.* (citing *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996)). The Court addresses each in turn.

*(a) First Prong of Associational Standing*

As to the first prong, Defendant briefly argues that Plaintiff's allegations lack the specificity to show that "its members would otherwise have standing to sue in their own right." Mot. 17, ECF No. 31 (quoting *Hunt*, 432 U.S. at 343). Plaintiff disagrees, concluding that it "has identified more than one member of the association who has standing to sue in [his or her] own right" because some of Defendant's franchisees, who are also members of Plaintiff, signed the allegedly unlawful Amendment, though others did not. *See* Resp. 18, ECF No. 36 (citing Powell Dec., ¶¶ 5, 14–16, ECF No. 15-1). And even absent the Amendment, Plaintiff points to the

allegedly increased fees and inflated vendor payments resulting from Defendant's actions as an economic harm to individual franchisees. *See* Resp. 2, 12–15, ECF No. 36.

"The first prong requires that at least one member of the association have standing to sue in his or her own right." *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 191 (5th Cir. 2012) (citing *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587–88 (5th Cir. 2006)). To satisfy this prong, an association must make "specific allegations establishing that at least one identified member ha[s] suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009); *see also Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 (5th Cir. 2012). At the pleading stage, an associational plaintiff's allegations of a concrete injury to its members are sufficient to confer associational standing. *See Hancock Cnty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012) ("We are aware of no precedent holding that an association must set forth the name of a particular member in its complaint in order to survive a Rule 12(b)(1) motion to dismiss based on lack of associational standing."); *see also OCA-Greater Houston v. Texas*, 867 F.3d 604, 611–12 (5th Cir. 2017). "[A]t later stages of litigation, [a p]laintiff[] may have to come forward with evidence to support its allegations that specific members of its organization . . . have been harmed." *Summers*, 555 U.S. at 499; *see, e.g., Tex. All. for Retired Ams. v. Hughs*, 489 F. Supp. 3d 667, 683–84 (S.D. Tex. 2020).

Here, the Court finds the pleadings sufficient to show, at this stage, that Plaintiff's members would otherwise have standing to sue. Plaintiff identifies Powell, one of its members and a franchisee of Defendant, and "[o]ne of [Plaintiff's] representatives who attended [a March 2020] meeting [in Dallas] was a representative of two (2) franchise locations who have not signed the . . . Amendment." *See* Resp. 18, ECF No. 36 (citing Powell Dec., ¶¶ 5, 14–16, ECF

No. 15-1). As franchisees, these members have suffered and continue to risk suffering an alleged economic injury in the form of increased fees and inflated vendor payments, allegedly outside the scope of the Franchise Agreement and not properly disclosed in the FDD. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734; *Pac. Gas & Elec. Co. v. FERC*, 106 F.3d 1190, 1195 (5th Cir. 1997) (concluding that a high risk of economic injury is sufficiently real, immediate, and direct). Thus, the Court concludes that a Plaintiff-member-franchisee's alleged economic injury is a sufficiently concrete injury, traceable to Defendant and redressable by the Court, which would give Plaintiff's members standing to sue Defendant in their own right.[5]

*(b) Third Prong of Associational Standing*

Defendant argues more substantially that Plaintiff's assertion of standing fails *Hunt*'s third prong because "Plaintiff's claims and relief requested require individualized, fact-intensive inquiries." Mot. 10, ECF No. 31. Focusing on the varied contractual relationships and representations between the franchisor Defendant and its individual franchisees, Defendant highlights the individualized inquiries required for the Court's finding (1) which franchisees signed the Amendment and new Authorizations, (2) which franchisees were defrauded into signing the Amendment and new Authorizations, (3) which franchisor representations and to which franchisees violated the TDTPCA or the NJFPA or constituted other torts, and (4) which franchisees are bound by arbitration provisions. Mot. 10–17, ECF No. 38. In response, Plaintiff puts forth four theories why individual franchisee participation is not warranted. First, Plaintiff only requests declaratory and injunctive relief, *see id.* at 9–10; second, at best, discovery requests may lead to resolution without member participation at all and, at worst, only members who

---

[5] The Court's first-prong conclusion aligns with other courts to have addressed a franchisee association's standing on behalf of its members. *See, e.g., Dunkin' Donuts Franchised Rests. LLC v. Shrijee Inv., Inc.*, Nos. 08-12836, 08-14213, 2008 WL 5384077, at *11 (E.D. Mich. Dec. 23, 2008); *EA Indep. Franchisee Ass'n, LLC v. Edible Arrangements Int'l, Inc.*, No. 3:10-cv-1489, 2011 WL 2938077, at *1 (D. Conn. July 19, 2011); *Nat'l Franchisee Ass'n v. Burger King Corp.*, 715 F. Supp. 2d 1232, 1239 (S.D. Fla. 2010).

executed the Amendment or new Authorization, not all members, will need to participate, *see* Resp. 12, ECF No. 36; third, Plaintiff's claims center on only Defendant's "uniformly and in bad faith" actions, not the franchisees', *see id.*; and fourth, although the franchise agreements differ slightly among the franchisees, the franchisees are "substantially similarly . . . affected by [Defendant]'s machinations," *see id.* at 17.

"Because *Hunt*'s third prong is prudential, the general prohibition on a litigant's raising another person's legal rights is a judicially self-imposed limit on the exercise of federal jurisdiction, not a constitutional mandate." *Ass'n of Am. Physicians*, 627 F.3d at 551 (quoting *Brown Grp.*, 517 U.S. at 557) (internal citations, quotations, and brackets omitted). "To satisfy the third prong, a party must show that 'the nature of the case does not require the participation of the individual affected members as plaintiffs to resolve the claims or prayers for relief at issue.'" *Prison Just. League v. Bailey*, 697 F. App'x 362, 363 (5th Cir. 2017) (quoting *Friends for Am. Free Enter. Ass'n v. Walmart Stores*, 284 F.3d 575, 577–78 (5th Cir. 2002)). "In particular, a party satisfies the third prong if its 'claims can be proven by evidence from representative injured members, without a fact-intensive-individual inquiry.'" *Id.* (quoting *Ass'n of Am. Physicians*, 627 F.3d at 552).

"[A]n association may assert a claim that requires participation by *some* members." *Hosp. Council of W. Pa. v. City of Pittsburgh*, 949 F.2d 83, 89 (3d Cir. 1991) (cited approvingly by *Ass'n of Am. Physicians*, 627 F.3d at 551–52); *see also Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 601–02 (7th Cir. 1993) ("We can discern no indication . . . that the Supreme Court intended to limit representational standing to cases in which it would not be necessary to take any evidence from individual members of an association."). Thus, courts focus on "matters of administrative convenience and efficiency . . . by examining both the relief

requested and the claims asserted." *Id.* (internal quotation marks omitted) (quoting *Brown Grp.*, 517 U.S. at 557) (citing *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 134 n.5 (5th Cir. 2009)). "In general, 'an association's action for damages running solely to its members would be barred for want of the association's standing to sue.'" *Id.* (quoting *Brown Grp.*, 517 U.S. at 546). "Conversely, requests for declaratory or injunctive relief rarely require individual determinations." *Hunter v. Branch Banking & Tr. Co.*, No. 3:12-cv-2437-D, 2013 WL 4052411, at *7 (N.D. Tex. Aug. 12, 2013) (Fitzwater, J.) (citing *Retired Chi. Police Ass'n*, 7 F.3d at 603); *see also Ass'n of Am. Physicians*, 627 F.3d at 551.[6]

For the few courts that have addressed a franchisee association's standing to sue on behalf of its members, the hang-up often occurs at this third prong. Courts faced with the issue have aired prudential concerns about conflicting state law in multiple interested jurisdictions[7]; claims of tortious conduct and breach of contract instead of discrete legal issues like challenges to statutes and regulations[8]; a party to a contract not present to litigate that contract[9]; the risk in

---

[6] While the legal standard set forth in *Ass'n of Am. Physicians* controls the analysis, the healthcare market and its relationship with the state medical board is patently distinct from the franchisor-franchisee relationship here. *See Mich. Dairy Queen Operators' Ass'n v. Int'l Dairy Queen Inc.*, No. 1:08-cv-36, 2008 WL 2566547, at *2 (W.D. Mich. June 9, 2008) ("[*PA Psych.*] involved a somewhat unique market, namely, the healthcare market, which is characterized by many parties"). Thus, the prudential concerns at the third prong should and do drastically vary from those in *Ass'n of Am. Physicians*.

[7] *See, e.g., Ass'n of Merger Dealers, LLC v. Tosco Corp.*, 167 F. Supp. 2d 65, 73–74 (D.D.C. 2001) ("[T]here is a conflict between the law of the several potentially interested jurisdictions [Virginia, Maryland, and the District of Columbia] respecting associational standing."); *DDFA of South Florida, Inc. v. Dunkin' Donuts, Inc.*, No. 00-7455-civ, 2002 WL 1187207, at *7 (S.D. Fla. May 22, 2002) (same); *Dealer Store Owners Ass'n, Inc. v. Sears, Roebuck & Co.*, No. civ05-1256, 2006 WL 91335, at *5 (D. Minn. Jan. 12, 2006) ("Moreover, there is no indication or allegation that every [franchisee] is subject to the franchise laws of each state named in the Complaint. Thus, a declaratory judgment on these counts is inappropriate.").

[8] *See, e.g., DDFA*, 2002 WL 1187207, at *7 (finding the allegations of tortious conduct and breach of contract would require individual determinations as to whether the franchisor committed those torts and whether the members or the franchisor complied with provisions of the franchise agreement); *Shrijee Inv.*, 2008 WL 5384077, at *11 (same); *Dealer Store Owners Ass'n,* 2006 WL 91335, at *4–5 ("this case does not fit the typical associational standing case, where a statute or regulation is being challenged.").

divergences in individual franchisees' franchise agreements[10]; declaratory relief only framing the controversy between the parties instead of resolving the controversy[11]; and the inherently individualized nature of some underlying legal standards like "bad faith" and "unreasonableness."[12] Only two courts—including one cited by Plaintiff—have concluded a franchisee association could proceed under a theory of associational standing, but even there, their analysis largely rested on the deference of the pleading stage, the narrowness of the declaratory relief based on purely legal remedies, the uniformity of the franchise agreements, and the expectation of later class certification.[13]

---

[9] *See, e.g., Mich. Dairy Queen Operators' Ass'n*, 2008 WL 2566547, at *2–3 (W.D. Mich. June 9, 2008) (ruling from the bench) ("Fundamentally, I don't understand how a Court can meaningfully construe a contract that involves a party not before the Court."); *Shrijee Inv.*, 2008 WL 5384077, at *11 (same).

[10] *See, e.g., Dealer Store Owners Ass'n,* 2006 WL 91335, at *4 ("However, the fact that the Agreements may differ render this exercise futile."); *Shrijee Inv.*, 2008 WL 5384077, at *11 ("To the extent that the terms of the franchise agreements and the individual circumstances of the franchisees vary one from another, the [franchise association]'s claims that [the franchisor] breached its contracts with each of the [franchise association]'s members are ill suited to mass adjudication.").

[11] *See, e.g., Mich. Dairy Queen Operators' Ass'n*, 2008 WL 2566547, at *2–3 (concluding declaratory relief was inappropriate because it would do nothing other than frame the controversy between the parties).

[12] *See, e.g., Shrijee Inv.*, 2008 WL 5384077, at *11–12 ("Whether [the franchisor]'s expansion plans were made in bad faith with respect to any given franchisee would require a detailed investigation into the neighborhood in which the franchise is located and [the franchisor]'s expansion plans therein, as well as into its preexisting treatment of the franchisee") ("[D]etermining whether [the franchisor]'s refusal to consent to any given proposed sale of a franchise was "unreasonable" will require an even more individualized inquiry into all the details of the proposed deal and [the franchisor]'s treatment thereof."); *Dealer Store Owners Ass'n*, 2006 WL 91335, at *4–5 (same for "course of dealing").

[13] Resp. 16, ECF No. 36 (citing *EA Indep. Franchisee Ass'n*, 2011 WL 2938077 (concluding that, at the 12(b)(6) stage, the existence of different variations of a franchise agreement, individual arbitration provisions, and individual interactions with the franchisor are no bar to associational standing for a purely legal remedy when defendant can prove the allegations with experts and defendant's own documents)); *but see EA Indep. Franchisee Ass'n, LLC v. Edible Arrangements Int'l, Inc.*, No. 3:10-cv-1489 WWE, 2012 WL 5878657, at *2 (D. Conn. Nov. 21, 2012) (Ultimately compelling arbitration with individual franchisees despite its earlier associational standing ruling) ("the Court's rulings on [the franchisee association]'s associational standing does not bear on the [the franchisor's] claim to compel arbitration"); *see also Nat'l Franchisee Ass'n*, 715 F. Supp. 2d at 1240 (noting the uniformity among franchise

Here, Plaintiff's fourteen declaratory requests raise the identical prudential concerns without the safeguards found by the two departing courts. *See* Resp. 12–15, ECF No. 36. The Court echoes the wisdom of the majority of courts best summarized by the Eastern District of Michigan:

> Even if each of the individual members agrees with the [franchise association]'s assessment of the facts of their case and its assessment of how they may be remedied, an umbrella organization such as a franchisee association simply is not in as good a position to present such subtleties to a Court.

*Dunkin' Donuts*, 2008 WL 5384077, at *11–12.[14] This Court, too, concludes that Plaintiff is simply not in the best position to present the subtleties of the franchisees' individualized contract and tort claims proffered as declarations and that Plaintiff has failed to show that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit[.]" *Ass'n of Am. Physicians*, 627 F.3d at 550; *see* Compl. ¶¶ 131–40, ECF No. 1. Accordingly, Plaintiff has failed to demonstrate associational standing to pursue its claims against Defendant, so the Court will grant Defendant's motion to dismiss.

### B. Motion for Attorneys' Fees

Defendant contends that it is entitled to attorneys' fees and costs it incurred with connection with the motion because the form franchise agreement requires franchisees to pay Defendant "all costs and expenses incurred by [Defendant] in enforcing the terms of [the Franchise] Agreement including, without limitation . . . reasonable attorneys' fees." Mot. 24,

---

agreements and lack of ambiguity of the only challenged provision, the opportunity to expand to a class certification for all franchisees, the need to reference only to the franchisor's internal documents and data).

[14] *See also Dealer Store Owners Ass'n*, 2006 WL 91335, at *4–5 ("[T]o determine whether any alleged breach caused a [franchisee] damage, each [franchisee]'s own Agreement with [the franchisor] would have to be explained, along with any actions by [the franchisor] which caused the breach, followed by an examination of the [franchisee] to determine what damages it incurred. This is precisely the type of scenario associational standing cases seek to avoid.").

ECF No. 31 (citing Def.'s App. 003, ¶ 14, ECF No. 32). Plaintiff argues that it "has established that not all of its members have executed the Purported Amendment and, as a result, [Defendant] is not entitled to seek counsel fees to enforce an agreement not all [Plaintiff's] members have executed as against [Plaintiff]." Resp. 21, ECF No. 36 (emphasis removed) (citing Powell Decl., ¶ 14, ECF No. 15-1). Based on the briefing, the Court lacks the relevant facts and law to consider in granting attorneys' fees based on a form franchise agreement to which Plaintiff and Defendant are not in privity of contract. Thus, the Court will deny Defendant's motion for attorneys' fees without prejudice. To the extent Defendant still believes it is entitled to attorneys' fees, it may move for the relief and fully brief the issue as proscribed by Federal Rule of Civil Procedure 54(d)(2).

## IV. CONCLUSION

Based on the foregoing, the Court finds Plaintiff lacks associational standing to bring this suit. Thus, the Court **GRANTS** Defendant UATP Management, LLC's Motion to Dismiss (ECF No. 31) with respect to all of Plaintiff's claims, which are hereby **DISMISSED without prejudice**.[15] Defendant's motion for attorneys' fees is **DENIED without prejudice**. Defendant's alternative motion to stay this suit pending arbitration is **DENIED as moot**. Pursuant to Federal Rule of Civil Procedure 58(a), a final judgment shall issue separately.

**SO ORDERED** on this **6th day** of **May, 2021**.

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE

---

[15] Federal courts generally give a plaintiff an opportunity to cure pleading defects before dismissing with prejudice unless the defect is incurable. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). The Court finds Plaintiff's lack of standing to bring these claims to be an incurable defect and, thus, dismisses the claims with prejudice. Because the conclusion is jurisdictional as to only Plaintiff's standing, nothing in this order should be construed to preclude individual franchisees from pursuing the same or substantially similar claims against Defendant in the future.